JOHN TINKER *v.* WALTER B. COBB.

*Trover.   Conversion.   Attachment.   Officer's Receipt.*

B. moved on to A.'s farm, in the spring of 1861, under an arrangement that A. should furnish means and B. cut the hay, either upon shares or for reasonable pay, as A. should elect.   A. furnished means and B. cut the hay according to agreement.   In January, 1862, A. elected to have the hay divided upon shares and they agreed that A. should have a lien upon B.'s share to secure and pay A. for advances.   Subsequently the hay was attached by the plaintiff C., on a debt against B.   After said attachment the hay was divided, and by mutual agreement between A., B. and the defendant D., B.'s share holden for said advances, was sold to D., he receipting therefor to the plaintiff.   *Held,* that the above statement of facts tends to show that B. never owned the hay.

*Held,* that up to the time of the sale to D. the hay was the property of A., and D. acquired a good title to it by the sale to him, and was the lawful owner of it at the time he executed his receipt to the plaintiff.

There being no evidence tending to show that the arrangement between A. and B. was made with a fraudulent intent to delay and defeat B.'s creditors, there was no ground upon which the plaintiff could claim that he was entitled to go to the jury with the case on that question.

THIS was an action of trover for the conversion of twelve tons of hay valued at $120.   Plea, the general issue, and trial by jury at the December Term, 1865, WILSON, J., presiding.   The plaintiff

introduced the writ, record and judgment, showing that the hay was attached at the date of said receipt, on a writ in favor of *George R. Holmes* v. *Horace B. Canfield*, and thereupon the defendant executed said receipt for the hay so attached.

The plaintiff introduced Canfield as a witness, who testified that the hay in question was cut on a farm in Derby, owned by L. B. Kent, who resided in Canada; that he, Canfield, moved on to the farm on the 7th day of May, 1861, under an arrangement with Kent to carry on the tillage and pasturage upon shares, but with no specific arrangement as to the hay; that he was owing debts, and a good deal embarrassed; that it was agreed that Kent should furnish means to carry on the farm and have a lien upon the crops for his security; that Kent should hold enough of Canfield's share of the crops to satisfy all advances; that about the 12th of July said parties arranged that Canfield should cut the hay, and put it in the barn upon the premises, either upon shares or for reasonable pay, as Kent should elect; that under this arrangement, Kent was to furnish the means, and he did furnish Canfield means, and Canfield cut the hay and put it into the barn for Kent; that about the middle of January, 1862, Kent came to said premises and signified to Canfield his election to have the hay divided as upon shares, and that Kent should have a lien upon Canfield's share of the hay, and hold enough of the same to secure and pay Kent for his advances, which it was agreed were one hundred dollars; after said attachment, and on the 22d day of January, 1862, the hay was divided, and by mutual agreement between Kent, Canfield, and the defendant, Cobb, all Canfield's portion of the hay holden for said advances, except a small portion in the shed, was sold to Cobb in satisfaction of a debt due from Kent, it being a debt contracted for means to carry on the farm, and to cut said hay. Canfield further testified that the hay, holden to Kent to pay said advances, was at the time of the division, set apart for Cobb, to pay said debt, and that Cobb took the hay so set apart, and took enough to pay said debt and no more, and that he receipted no more. The plaintiff after showing that he had done all required by law to perfect a lien, in case of attachment of a debtor's property, and made demand in due season, rested his case.

Tinker *v.* Cobb.

The defendant insisted that the plaintiff had established no legal ground of recovery. The plaintiff claimed that by his attachment he had acquired a lien upon all the property Canfield had in said hay subject to the lien that Kent had to secure a debt due him from Canfield of one hundred dollars, and that it was not competent for the parties to transfer that lien to the defendant, Cobb, to secure *another debt;* that the plaintiff had a right to go to the jury on the question that the arrangement between Canfield and Kent was made to delay and defeat the creditors of Canfield, and that at all events the plaintiff had a right to recover the $20., being the excess of said receipt over and above Kent's lien upon said hay. But the court ordered a verdict for the defendant,—to which the plaintiff excepted.

*N. T. Sheafe* and *T. P. Redfield*, for the plaintiff.

1. The defendant is liable, if at all, for the valuation named; namely, twelve tons, valued at $120. The general ownership was in Canfield. Kent had a lien to the extent of $100.

2. Kent's lien could not be assigned to secure another debt. Canfield had the possession at the time of the attachment, and Cobb got the title as against the attachment without a change of possession.

3. The plaintiff had the right to go to the jury that the holding of the *hay* in abeyance till the middle of January, then dividing and transferring at the same moment to a creditor of Canfield's, was fraudulent as against the attachment.

*George N. Dale*, for the defendant.

I. 1st. Canfield never had any property in the hay. 2d. It was to remain in Kent, and he was "to hold enough to satisfy all advances." 3d. It was not a transfer of Kent's line to Cobb, but a *sale* of Kent's hay to Cobb, not to secure another debt, but *to pay* a debt due from Kent to Cobb. 4th. Kent had a right to retain the property in the hay when he leased the farm. *Bellows* v. *Wells*, 36 Vt. 599 and cases there cited. 5th. This could not affect Holmes because it was all done before he acquired any interest in the property.

II.   The plaintiff had no right to go to the jury on the question of fraud without evidence tending to show that the transaction was to hinder and delay creditors, more especially while his own evidence showed Kent's debt to be an actual *bone fide* debt.

The opinion of the court was delivered by

KELLOGG, J.   If the defendant, at the time he executed his receipt to the plaintiff, was the owner of the hay described in the receipt, it was wrongfully attached by the plaintiff as the property of Canfield, and the plaintiff had no legal ground for recovery against the defendant on account of it.   The case therefore presented only a question in respect to the title to the property at the time of the attachment.   The plaintiff claimed that it belonged to Canfield, and, to support this claim, he introduced the testimony of Canfield, which was the only evidence in respect to the title to the property.   The case stood on the plaintiff's evidence ;   and the defendant claimed that, upon this evidence, the plaintiff could not recover, and the court, taking the same view of the case, directed a verdict in favor of the defendant.

We think that there was nothing in the testimony of Canfield which tended to show that he ever owned the hay.   Up to the time when Kent signified his election to have the hay divided, as upon shares, this was clearly the case ;   and when the hay was actually divided between Kent and Canfield, it was divided under an agreement that Kent should have a lien on Canfield's share, and hold enough of it to secure him for his advances to Canfield, which were agreed to amount to the sum of one hundred dollars.   The hay was the property of Kent entire, or it was all subject to his lien entire. It was not divided until after the attachment was made, and, when the attachment was made, Canfield had no property in it and no lien upon it.   At the time when the hay was divided, all of Canfield's part, except a small portion in the shed, was, by mutual agreement between Kent, Canfield, and the defendant, sold to the defendant in satisfaction of a debt due to him from Kent which was contracted for means to carry on the farm and cut the hay.   Canfield further testified that the hay which was holden to Kent for the payment of

his advances was, at the time of the division, set apart for the defendant, to pay Kent's debt to him, and that the defendant took the hay so set apart, but took no more than what was necessary to pay that debt, and receipted to the plaintiff only the hay which he took away. From this evidence, it appeared that, up to the time of the sale to the defendant, the whole of the hay was the property of Kent; and we think that the defendant acquired a good title to it by the sale to him, and was the lawful owner of it at the time he executed his receipt to the plaintiff.

We find nothing in the evidence which tended to show that the arrangement between Canfield and Kent was made with a fraudulent intent to delay and defeat the creditors of Canfield, and consequently there was no ground upon which the plaintiff could claim that he was entitled to go to the jury with the case on that question. Canfield had no property in, or lien upon, the hay which was transferred to Kent by the arrangement; and if he acquired any interest in it it was by virtue of the division, which was not made until after the attachment. And, as already stated, we think that the hay remained the property of Kent up to the time when it was sold to the defendant.

The plaintiff's evidence showed that the defendant took no more hay away than enough to pay his debt against Kent, and that Kent always owned as much as this, and that this was all which the defendant receipted. It therefore made no difference in respect to the value of the hay stated in the receipt, because the defendant was the owner of all of the hay which he receipted.

Judgment of the county court in favor of the defendant affirmed.